**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Earvin LEWIS and Melvin Ronnell Wade, Defendants–Appellants.**

**No. 89–4371.**

United States Court of Appeals,
Fifth Circuit.

May 23, 1990.

George L. Lucas, Jackson, Miss., for Lewis.

Joseph E. Lewis, Tallahassee, Fla., pro se.

I. Mark Bledstein, Encino, Cal., for Wade.

**1178**

Dolan D. Self, Jr., Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before REAVLEY, JONES, and DUHÉ, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants Melvin Wade and Joseph Lewis were convicted in the district court on drug trafficking charges. Finding none of his arguments on appeal persuasive, we affirm Wade's conviction and sentence. Having determined that there was insufficient evidence to convict Lewis, we must reverse his conviction.

## I.

### BACKGROUND

On December 2, 1988, Inspector Dan Overton of the United States Postal Inspection Service received warning from a fellow inspector in Los Angeles, California that a parcel containing suspected non-mailable materials would be arriving in Jackson, Mississippi that morning via Express Mail. The suspect package was addressed to a "Nicole Harris" at an address in Ridgeland, Mississippi. The evidence later revealed that no one named "Nicole Harris" resided at the listed address. Rather, the apartment was actually occupied by Ms. Sudie Jones, a friend of appellant Lewis, and her young daughter.[1]

When the package arrived at the Jackson airport, Overton picked it up and took it to his office. There a trained detection dog alerted to the package. A search warrant was then obtained, and the package was opened. Inside were a pair of men's slippers and approximately 237 grams of crack cocaine. After examining the contents, the officers prepared the package for a controlled delivery by substituting paraffin wax for most of the cocaine and resealing the package. The next morning Overton, disguised as a postal carrier, delivered the package to the designated address. Appellant Wade, who had spent the night at Sudie Jones's apartment, signed for the package using the name "Roger Harris".

Following the delivery, federal and state officers established surveillance of the apartment and waited. Meanwhile, after shutting himself in Sudie Jones's bedroom, Wade opened the package. Apparently displeased with what he discovered inside, he flushed the contents down the toilet. He immediately made a long distance phone call to Los Angeles during which, Ms. Jones testified, he was visibly upset. Wade's second phone call was to Lewis, who arrived shortly afterward. The two were arrested as they attempted to leave in Lewis's car.

Appellant Wade was a resident of Los Angeles, California at the time of the events in question. In mid-November, 1988, Wade returned to Mississippi, where he had grown up, purportedly to visit friends and relatives. Sometime after his return Wade contacted Lewis, who was a longtime friend, and the two socialized on a number of occasions during Wade's stay in Mississippi. It was Lewis who introduced Wade to Sudie Jones.

Lewis and Wade were charged in a three count indictment. Count 1 charged appellants with conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Count 2 charged them with possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count 3 charged appellants with using the mails to facilitate the other two offenses, in violation of 21 U.S.C. § 843(b). After a jury trial, Wade was convicted on all three counts. Lewis was convicted only on counts one and three. Applying the sentencing guidelines, the district court sentenced Lewis to 151 months imprisonment and a five year term of supervised release. Wade was sentenced to 157 months impris-

---

1. Ms. Jones explained at trial that she regularly received her mail under the name Nicole Harris.

onment and a five year term of supervised release.

Lewis and Wade make numerous arguments on appeal. We address each contention in turn.

## II.

## DISCUSSION

### A. Hearsay

At the time of their arrest, each appellant had in his possession an electronic pager or "beeper". These pagers were seized by the Ridgeland Police. Later that day, at the police station, the pager associated with Lewis began beeping. Officer Jerry Price called the number displayed on the pager and identified himself as Lewis. The person on the other end asked Price "Did you get the stuff?" Price answered affirmatively. The unidentified person then asked "Where is Dog?" Price responded that "Dog" was not available. He then tried to arrange a meeting with the unknown caller, but no one showed up at the appointed rendezvous. The evidence at trial revealed that "Dog" is Wade's nickname.

■ Lewis and Wade contend that the district court erred by allowing Officer Price to testify to the questions asked by the unidentified caller. They argue that the questions are hearsay that should have been excluded pursuant to Fed.R.Evid. 802. We disagree. Officer Price's testimony was not hearsay because the questions asked by the unknown caller were not "statements" within the definition of hearsay.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Fed.R.Evid. 801(c). A "statement" is then defined as an *oral or written assertion* or nonverbal conduct intended as an assertion. Fed.R.Evid. 801(a). The effect of this definition is to remove from the operation of the hearsay rule "all evidence of conduct, verbal or nonverbal, not intended as an assertion." Fed.R.Evid. 801(a) advisory committee's note; *United States v. Jackson*, 588 F.2d 1046, 1049 n. 4 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). While "assertion" is not defined in the rule, the term has the connotation of a positive declaration. *See* Webster's Ninth New Collegiate Dictionary 109 (1985 ed.). The questions asked by the unknown caller, like most questions and inquiries, are not hearsay because they do not, and were not intended to, assert anything. D. Binder, *Hearsay Handbook* § 2.03 (2d. ed. & 1989 supp.); *Inc. Publishing Corp. v. Manhattan Magazine, Inc.*, 616 F.Supp. 370, 388 (S.D.N.Y.1985).[2]

■ Appellants argue that while the questions in this case are not direct assertions, there are certain assertions implicit in the questions. For example, they argue that implicit in the question "Did you get the stuff?" is an assertion that Lewis and/or Wade were expecting to receive some "stuff". However, Rule 801, through its definition of statement, forecloses appellants' argument by removing implied assertions from the coverage of the hearsay rule. *United States v. Groce*, 682 F.2d 1359, 1364 (11th Cir.1982); *United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky. 1980); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(a)[01] (1988). Accordingly, we conclude that because the questions asked by the unknown caller were not assertions, the questions were not hearsay, and the district court properly allowed Officer Price to repeat them in his testimony.[3]

2. Even if the questions were "statements" within Rule 801(a), they would not be hearsay because they were not offered to prove.the truth of the matter asserted. Fed.R.Evid. 801(c); *see United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988) ("statements" consisting merely of questions were not hearsay because

they were not offered to prove the truth of the matter asserted.)

3. Appellants also contend that the district court erred by refusing to give a limiting instruction with regard to the questions asked by the unidentified caller. Since we have concluded that the testimony was not hearsay, the district court

## B. Fourth Amendment

■ Appellant Wade contends that the inspectors violated his Fourth Amendment rights by detaining the Express Mail package for an unreasonable time. He argues that the officers should have delivered the package on the afternoon of December 2 (after the sniff test was conducted, the search warrant was issued, and the package was opened), instead of waiting to deliver the package the next morning. We disagree.

Wade relies on *United States v. LaFrance*, 879 F.2d 1 (1st Cir.1989), in which the First Circuit indicated that an investigative detention of an overnight package, based only on reasonable suspicion, may violate the Fourth Amendment if the detention continues, without probable cause, for an unreasonable time after the package's delivery deadline. Even if *LaFrance* is correct, it does not support Wade's argument. In this case, the officers were no longer relying on a reasonable suspicion to permit the detention of the package after it had been opened and cocaine was discovered inside. Therefore, *LaFrance's* "reasonable time" analysis for investigative detentions does not apply to the officers' overnight detention of the Express Mail package. The package was opened and the contraband seized pursuant to a warrant issued by a magistrate and based on probable cause. There has been no Fourth Amendment violation in this case.

## C. Effective Assistance of Counsel

■ Wade also contends that he was denied effective assistance of counsel because his trial counsel failed to move to suppress evidence obtained under the allegedly illegal search warrant, was unprepared to make the proper argument on the legality of the search warrant at trial, was not personally present at Wade's arraignment hearing, and failed to introduce the slippers as evidence that Wade's story that he was expecting only slippers was true. Wade did not raise this claim in the district court.

The general rule in this circuit is that "a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). We therefore decline to address the merits of Wade's ineffective assistance claim. However, we do so without prejudice to Wade's right to raise the issue in a proper habeas corpus proceeding. *See United States v. Jennings*, 891 F.2d 93, 95 (5th Cir.1989).

## D. Sufficiency of the Evidence

■ Both Lewis and Wade contend that there was insufficient evidence to support their convictions. In evaluating such a claim, we must examine the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the verdict. *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir.1989). The evidence is sufficient to sustain the verdict if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir.1989). In making such a determination " '[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.' " *United States v. Henry*, 849 F.2d 1534, 1536 (5th Cir.1988) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc)).

■ Both appellants challenge the sufficiency of the evidence to support their conspiracy convictions. To establish guilt of a drug conspiracy under 21 U.S.C. § 846, the Government must prove the existence of an agreement to import or to possess with intent to distribute, the defendants' knowledge of the agreement, and their voluntary

---

did not err by refusing to give any such instruction. Likewise, our determination that the testimony was not hearsay forecloses appellants' argument that the admission of the hearsay state-

ment of a co-conspirator violated their Sixth Amendment confrontation clause rights. *Compare Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

participation in it. *United States v. Alvarado*, 898 F.2d 987, 992 (5th Cir.1990). These elements may be established by circumstantial evidence. *Id.*

■ The facts recited earlier in this opinion reveal that the evidence was sufficient to convict Wade of conspiracy. Shortly after his return to Mississippi, Wade was in contact with someone in California who sent him a package containing 237 grams of cocaine. It is undisputed that Wade was expecting the package. The package bore a false return address, and Wade signed for the package using a false name. Upon opening the package and discovering the paraffin wax, he flushed the contents down the toilet and immediately called his "friend" in Los Angeles. He then attempted to leave the premises in Lewis's car. A rational jury could have found Wade guilty of conspiracy beyond a reasonable doubt.

■ On the other hand, the evidence against Lewis is insufficient to sustain his conspiracy conviction.[4] While a conspiracy may be established by circumstantial evidence, the evidence in this case fails to tie Lewis to a conspiracy. Rather, the majority of the evidence against Lewis merely establishes his relationship with Wade. Of course, such evidence, standing alone, will not support Lewis's conspiracy conviction. *United States v. Onick*, 889 F.2d 1425, 1432 (5th Cir.1989). The only other evidence against Lewis consists of Officer Price's brief and enigmatic conversation with the unidentified person who called Lewis's pager (the beeper conversation) and the fact that Wade's second phone call after opening the package was to Lewis. This tenuous evidence is not sufficient to establish Lewis's knowing and voluntary participation in a conspiracy. The government had the opportunity, especially through the testimony of Sudie Jones, to present evidence linking Lewis to the conspiracy, but it failed to do so. Accordingly, we must conclude that no reasonable jury could have found Lewis guilty of conspiracy beyond a reasonable doubt.[5]

■ Wade also argues that the evidence is insufficient to sustain his conviction for possession of cocaine. He apparently bases this argument on the fact that most of the cocaine was removed before the package was actually delivered to him. However, in this case we need not decide whether Wade had actual or constructive possession of the cocaine. Having found Wade guilty of conspiring to possess cocaine with intent to distribute, the jury could properly have found Wade guilty of possession under the vicarious liability doctrine of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under the *Pinkerton* theory, Wade could be found guilty of possessing cocaine if a coconspirator had possession of the cocaine in furtherance of the conspiracy. *Id.; United States v. Pierce*, 893 F.2d 669, 675–76 (5th Cir.1990). Since a reasonable jury could have found that one of Wade's coconspirators had had possession of the cocaine, the evidence is sufficient to sustain Wade's conviction.[6]

### III.

### CONCLUSION

Finding no error with regard to Wade, we affirm his conviction. However, the

---

4. Although the evidence was insufficient to convict Lewis of conspiracy, Wade's conspiracy conviction may still stand because a jury can convict a defendant of conspiring with unknown persons if, as here, the indictment charges a conspiracy with unknown persons and evidence supports their existence and the existence of a conspiracy. *United States v. Onick*, 889 F.2d 1425, 1432 (5th Cir.1989).

5. Having determined that the evidence is insufficient to sustain Lewis's conviction for conspiracy, we must reach the same conclusion with regard to his conviction for using the mails to transport the cocaine in violation of 21 U.S.C.

§ 843(b), since Lewis otherwise had no involvement in the shipment.

6. Wade also argues that the district court erred by sentencing him under the sentencing guidelines as if his offense involved all 237 grams of cocaine. Since we have determined that Wade was properly convicted of a conspiracy involving that amount and of possessing that amount, the district court's finding that the crime involved 237 grams is not clearly erroneous. *See United States v. Sarasti*, 869 F.2d 805, 806–07 (5th Cir.1989).

evidence is insufficient to sustain Lewis's conviction. The judgment of the district court is, therefore AFFIRMED as to Wade and REVERSED as to Lewis.