JEFFREY MANSKE, UNITED STATES MAGISTRATE JUDGE
*778 Before the Court are Defendant Cross Trailer Manufacturing and Sales, LLC's ("CTMS") Motion for Summary Judgment, Def.'s Mot. Summ. J. [ECF # 84], Defendant Cross Trailer's Sealed Exhibits, [ECF # 87], Plaintiff Cross Trailers' ("Cross Trailers") Summary Judgment Response, Pl.'s Summ. J. Resp. [ECF # 92], and Defendant Cross Trailer's Summary Judgment Reply, Def.'s Summ. J. Reply [ECF # 95]. For the reasons below, the Court orders Defendant CTMS's Motion for Summary Judgment be DENIED .
I.
BACKGROUND
A. Underlying Facts
The instant dispute arises from U.S. Trademark Number 4,520,252 ("Mark *252" or the "Mark").[1] Pl.'s Second Am. Complaint ¶ 10 [ECF # 101]. Plaintiff Cross Trailers alleges it owns Mark *252 as applied to cargo trailers in Trademark Manual Class 12 (Vehicles; apparatus for locomotion by land, air or water). Id. This mark, Plaintiff claims, consists of the term CROSS as used on Class 12 trailers. Id. It is also often associated with a cross symbol, though the mark does not appear to include the symbol on its own. Id. ; CROSS, Reg. No. 4,520,252.
Plaintiff sells cargo trailers bearing Mark *252 primarily in the Midwest with operations in the northern-most South as well. Pl.'s Summ. J. Resp., Ex. A (Lovely Decl. ¶ 10). Cross Trailers does not maintain any dealer relationships in Texas and did not at any relevant time. Id. It does maintain a website accessible across the United States and receives inquiries from individuals located in Texas about its services. Id. ¶ 3. Cross Trailers markets itself on social media in multiple languages and provides its English Facebook page as an example. Id. ¶ 6. Plaintiff regularly participates in the North American Trailer Dealer Association (NATDA) and advertises in the Association's magazine. Id. ¶¶ 6-7. While Plaintiff provides little information on the number of its direct sales, a part-owner of the company, Terry Lovely, testified: "Cross Trailers, Inc. has seriously considered opening additional manufacturing facilities in PA, IA, GA, UT and / or Texas." Lovely Decl. ¶ 12. It is undisputed at least seven of Plaintiff's trailers were sold in Texas during CTMS's operation. Def.'s Summ. J. Reply at 9.
Defendant also sells cargo trailers under the 'Cross' name and often bearing cross imagery. Pl.'s Complaint ¶ 12. It represents that it is focused on Texas and makes little to no effort to expand its market beyond states "surrounding" Texas. Def.'s Mot. Summ. J. at 5. A customer list from Defendant identifies dealerships in Texas, New Mexico, Oklahoma, Arkansas, Mississippi, and Massachusetts as customers. Def.'s Mot. Summ. J., Ex. A-6 (Cust. List Summ. at 1-6). A properly-authenticated list of Defendant's trailer sales, however, does not identify the locations of the customers. Def.'s Mot. Summ. J., Ex. D-1 (Sales Report at 1). Regardless, CTMS's primary market is located in Texas, though a not-insignificant-portion of its trailers were sold across the country and often in states where Plaintiff's trailers were already being registered by customers. Cathey Decl., Ex. 3 (Surveys Rep. at 1-7) (explained more thoroughly in section *779 C, subsection i. of the Court's discussion, infra).
B. Procedural History
On November 15, 2017, Plaintiff filed with leave of court its Amended Complaint. Pl.'s First Am. Compl. [ECF # 51]. Plaintiff alleged all Defendants were liable to it for violations of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Trademark Infringement). Id. ¶¶ 20-23. Defendant-Movant CTMS filed its Motion for Summary Judgment on May 10, 2018, arguing no genuine dispute exists on the "likelihood of confusion" prong of Plaintiff's Section 32 Trademark Infringement claim. Def.'s Mot. Summ. J. at 1-2; 15 U.S.C. § 1114(1). The specific issue Defendant CTMS raised in its Motion was the apparent lack of geographic overlap in markets between it and Plaintiff Cross Trailers, which Defendant argued defeats de facto Plaintiff's trademark infringement claim. Def.'s Mot. Summ. J. at 2 ("because there is no genuine issue of material fact regarding the alleged infringement, trial is unnecessary and final summary judgment in favor of Defendant is warranted"). Defendant relied in part on the testimony of its owner Larry Cathey, who opined Plaintiff's prospects of establishing a dealership base in Texas in the near future were remote. Id. at 9.
Plaintiff responded to Defendant's Motion on May 31, 2018. Pl.'s Summ. J. Resp. First, Plaintiff objected to the testimony of Larry Cathy regarding Plaintiff's potential expansion to Texas. Id. at 6. Second, it argued CTMS did not show the conflicting marks were used in separate and distinct geographic markets as alleged and produced evidence it claim showed both a likelihood of confusion and actual confusion by customers. Id. at 7; Dawn Donut Co. v. Hart's Food Stores, Inc. , 267 F.2d 358 (2nd Cir. 1959). Its evidence included testimony by its owner, Terry Lovely, of instances of actual confusion. Pl.'s Summ. J. Resp. at 3. Third, it asked the Court to defer ruling until additional discovery was complete. Id. at 15. Plaintiff generally discussed a delay to encompass the discovery period (ending October 26, 2018) or a spoliation ruling for which no timetable is known. Id. at 15-18. In the five months since Plaintiff requested time for discovery, Plaintiff made no effort to supplement the summary judgment record with additional evidence obtained during this period.
Defendant replied on June 7, 2018 and filed objections to Plaintiff's Response. Def.'s Summ. J. Reply. Defendant objected to the entirety of Plaintiff's customer confusion evidence as inadmissible. Id. at 3. It further objected to the Lovely Declaration as impermissibly-conclusory. Id. Otherwise, Defendant reasserted the overlap of its customers and Plaintiff's was a rarity. Id. at 9. It also argued deferral of its Motion was unnecessary given the level of discovery already completed. Id. at 9-10. CTMS did not respond to Plaintiff's objection to the testimony of witness Cathy. Plaintiff, for its part, never responded to CTMS's objections to its evidence, either.
On June 22, 2018 Plaintiff moved unopposed for leave to file a new complaint. Pl.'s Mot. Leave [ECF # 99]. The Court granted leave and accepted Plaintiff's Second Amended Complaint on July 9, 2018. Pl.'s Second Am. Compl. The new complaint added causes of action under Section 43 of the Lanham Act, 15 U.S.C. § 1125 (Trade Dress Infringement) as well as Texas Common Law (Trademark Infringement, Unfair Competition, and Unjust Enrichment). Id. ¶¶ 26-37. CTMS answered this new complaint on August 1, 2018. Def. CTMS's Ans. [ECF # 114]. However, CTMS never moved to amend its summary judgment motion to address the new causes of action.
*780 II.
LEGAL STANDARD
Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one likely to reasonably affect the outcome of a case. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is not genuine if the trier of fact could not, after an examination of the record, find for the non-moving party. Matsushita Elec. Indus., Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden of demonstrating no genuine dispute of material fact exists lies with the moving party. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In establishing a genuine dispute of material fact, the party opposing summary judgment must set forth specific facts establishing a genuine dispute worthy of trial. Topalian v. Ehrman , 954 F.2d 1125, 1132 (5th Cir. 1992). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy v. Leading Edge Prods. , 44 F.3d 308, 312 (5th Cir. 1995). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient summary judgment evidence. Forsyth v. Barr , 19 F.3d 1527, 1533 (5th Cir. 1994).
Once presented, a court must view the movant's evidence and all factual inferences therefrom in a light most favorable to the party opposing summary judgment. Tolan v. Cotton , 572 U.S. 650, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). The court may not grant summary judgment merely because the court believes the non-moving party will be unsuccessful at trial. Jones v. Geophysical Co. , 669 F.2d 280, 283 (5th Cir. 1982). That does not mean that a factual dispute automatically defeats a motion for summary judgment, however. Scott v. Harris , 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." Id.
When a movant presents sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the non-movant. Matsushita Elec. Indus. , 475 U.S. at 586, 106 S.Ct. 1348 ; Schoen v. Underwood , No. 6:11-cv-00016, 2012 WL 13034044, at *2 (W.D. Tex. May 15, 2012) (Smith, J.). To demonstrate a genuinely disputed fact, the non-moving party must cite to particular materials within the record, such as affidavits, declarations, admissions, or other materials, or show the materials relied upon by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)-(B). If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of facts, the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for the purposes of the motion;
(3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or
(4) issue any other appropriate order.
FED. R. CIV. P. 56(e).
A requirement to establish infringement under 15 U.S.C. 1114 is "a likelihood of confusion in the minds of potential customers as to the source, affiliation, *781 or sponsorship." Alliance for Good Gov. v. Coalition for Better Gov. , 901 F.3d 498, 508 (5th Cir. 2018) (quotation marks and citations omitted). The "likelihood" contemplated by the statute is a "probability," not a "possibility." Id. In assessing likelihood of confusion, the Fifth Circuit utilizes eight factors: "(1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." Id. at 508-09. None of the factors is ultimately dispositive and even a majority of the factors can still result in the opposite finding. Id. Given this variance, assessment of these factors typically constitutes a contested fact issue. Id.
III.
DISCUSSION
CTMS seeks summary judgment solely on the issue of geographic disparity between the parties' markets. Def.'s Mot. Summ. J. at 2. First, the parties dispute whether geographic disparity is dispositive of a likelihood of confusion claim. Pl.'s Summ. J. Resp. at 7-8 n.2; Def.'s Summ. J. Reply at 2 ns.3-5. Second, the parties challenge each other's evidence as inadmissible for various evidentiary defects. Pl.'s Summ. J. Resp. at 7; Def.'s Summ. J. Reply at 6. Finally, while the parties do not dispute the degree of overlap in their markets, they dispute the relevance of such overlap. Def.'s Mot. Summ. J. at 10. The Court addresses these three issues in turn.
A. Applicability of Dawn Donut
Notably absent from the Fifth Circuit's eight-factor test is a requirement the infringing user operate in a geographically-identical and indistinct market from the senior user. Alliance for Good Gov. , 901 F.3d at 508 ; c.f. John R. Thompson Co. v. Holloway , 366 F.2d 108, 114 (5th Cir. 1966) ("[w]here unauthorized use of a conflicting mark is confined to a ... geographically separate market by the junior user, there may be no present likelihood of public confusion"). This absence occurs despite the Fifth Circuit historically adopting the Second Circuit's decision in Dawn Donut Co. v. Hart's Food Stores, Inc. , 267 F.2d 358, 364 (2nd Cir. 1959), which held a senior user could not enforce its mark against infringing use in a "sufficiently distinct and geographically separate" market without a likelihood the senior user would enter the junior user's market. Holloway , 366 F.2d at 114. The Fifth Circuit has not referenced the Dawn Donut doctrine in ten years nor applied it in nearly thirty. Am. Rice, Inc. v. Producers Rice Mill, Inc. , 518 F.3d 321, 329 n.20 (5th Cir. 2008) ; Union Nat. Bank of Texas v. Union Nat. Bank of Texas , 909 F.2d 839, 843 (5th Cir. 1990).
i. Dawn Donut must still be applied in this Circuit.
Given the opening, Plaintiff asks whether Dawn Donut should apply in this circuit. Pl.'s Summ. J. Resp. at 7 n.2. Referring to the principle as "flawed and outdated[,]" Plaintiff argues Dawn Donut *782 was wrong when decided as it conflicts with the Lanham Act's express grant of the exclusive right to use the registered mark in commerce. Id. ; 15 U.S.C. § 1115(b). It further argues the Fifth Circuit has not recently applied the doctrine and the growth of ecommerce made geographic boundaries near-irrelevant in business. Pl.'s Summ. J. Resp. at 7-8 n.2. Defendant CTMS, alternatively, argues Dawn Donut was applied by three Texas district courts in the last year alone and by the Fifth Circuit as recently as 1990. Def.'s Summ. J. Reply at 2 ns.3-5.
The Court must immediately dispatch Plaintiff's first argument that Dawn Donut was wrong when decided. Id. This is not because the Court does not sympathize with Plaintiff's position; it does. E.g. Dawn Donut , 267 F.2d at 362 (holding the Lanham Act grants "the exclusive right to use the mark in commerce" and noting commerce is defined by the Act to "include all the commerce which may lawfully be regulated by Congress"). However, the Fifth Circuit's express acceptance of Dawn Donut binds this Court. Gorgeous Gals, LLC v. Hey Gorgeous! Spa & Wellness, LLC , No. 1:16-cv-903-RP, 2017 WL 5016036, at *8 (W.D. Tex. Nov. 2, 2017) (Pitman, J.) (considering Dawn Donut in the context of an intermediate junior user). Reversing the adoption of Dawn Donut must be addressed in New Orleans.
The Court is in a more tenable position on Plaintiff's second argument; that the factual / legal underpinnings of Dawn Donut's holding no longer apply, thus negating the ruling's applicability.[2] However, at the time of Dawn Donut , geographical economic boundaries were already a dissolving relic.[3] The internet certainly seems revolutionary-and the Court will not destroy its credibility by claiming otherwise-but in commerce mail-order businesses like Sears, Roebuck & Co. were well-established by the 1950s. Thomas, Derek; The History of Sears Predicts Nearly Everything Amazon Is Doing. They gave consumers the ability to buy goods from across the country without regard to geographic boundaries. Id. It was "an internet before the internet." Id. Thus, the Second and Fifth Circuits accepted Dawn Donut 's reasoning despite the known irrelevance of geographic borders in commerce. Id. In fact, by the time of the Fifth Circuit's last citation to Dawn Donut in 1997, the internet, eBay, and Amazon existed. Exxon Corp. v. Oxxford Clothes, Inc. , 109 F.3d 1070, 1078 (5th Cir. 1997). The Court cannot conclude the Fifth Circuit's acceptance of Dawn Donut was unknowing of modern electronic commerce. Id.
ii. Dawn Donut created an exception to the general factor analysis.
Still, Dawn Donut is inconsistently relevant in this circuit.[4] The most recent Fifth Circuit case of import, Alliance for Good Government , did not discuss Dawn Donut or address the geographic boundaries between end users as a separate and significant point of analysis. Alliance for Good Gov. , 901 F.3d at 511. Instead, the Fifth Circuit mentioned geography offhand and in tempered fashion. Id. at 512. Specifically, the Fifth Circuit noted only that "[t]he greater the overlap between the outlets for, and consumers of, the services, the greater the potential for confusion." Id.
*783 This is a striking departure from the dispositive language used by the Court in pre-1990 rulings. See Holloway , 366 F.2d at 114 ("A registrant[ ] ... has no presently (sic) enforcible rights in an area to which there is no presently provable probability of such expansion of the registrant's services or reputation as will create a likelihood of confusion[ ]").[5]
District courts took note of the Fifth Circuit's rarer application and moderated tone. The Southern District of Texas considered the geographically-distinct markets of end users a factor in its analysis, but did not "require [ ] the mark holder use its mark continuously in all areas[.]" Vesta Corp. v. Vesta Mgmt. Srvs., LLC , No. H-15-719, 2016 WL 8710440, at *13 (S.D. Tex. Sept. 30, 2016) (considered in the context of abandonment). The court then held: "if the owner and possible infringer are not in the same state, the risk of confusion and of infringement is reduced. This factor may also bear on the terms of an injunction's geographic reach if infringement is found." Id. Similarly, this Court, the Honorable Robert Pitman, found distinct geographic markets with rare customer overlap insufficient to apply Dawn Donut as the markets were only one-hundred miles apart. Gorgeous Gals , 2017 WL 5016036, at *8. Interestingly, the Court considered Dawn Donut a "defense" to summary judgment. Id. (noted jointly with intermediate junior mark user defense).
Given the above, the Court concludes Dawn Donut applies in this circuit, but as a factor among the many stated by the Fifth Circuit. Vesta Corp. , 2016 WL 8710440, at *13. The Fifth Circuit states, explicitly, no factor in the likelihood of confusion analysis is dispositive-presumably, then, this includes geographically-distinct markets. Alliance for Good Gov. , 901 F.3d at 508-12 (noting overlap of markets creates only "[a] greater potential for confusion"). Given, however, Dawn Donut is still good law in this Circuit, the Court agrees with the Honorable Robert Pitman that Dawn Donut can be dispositive, but as a defense proven by the alleged infringer. Gorgeous Gals , 2017 WL 5016036, at *8.
Therefore, CTMS will be entitled to summary judgment if it establishes no genuine dispute exists that Cross Trailers did not use the Mark "in the same trading area" as CTMS and Cross Trailers would not likely expand into said area in the future.[6] For Dawn Donut to be dispositive, CTMS must both identify the specific areas in which no genuine dispute exists and produce evidence showing such a pronounced geographic disparity that Dawn Donut must apply. Russ v. Int'l Paper Co. , 943 F.2d 589, 591 (5th Cir. 1991) (per curiam). Otherwise, the Court can only consider whether the alleged non-overlap of the parties' markets in conjunction with the other factors shows beyond a genuine dispute no likelihood of confusion exists in the case at bar. Id.
B. Evidentiary Challenges
In a summary judgment posture, the evidence presented by each party must be admissible. FED. R. CIV. P. 56(c)(2). Declarations *784 or affidavits used to support a summary judgment pleading "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Id. at 56(c)(4). Plaintiff moved to strike part of Exhibit D to Defendant's Motion for Summary Judgment as conclusory under Rule 56(c)(4). Pl.'s Summ. J. Resp. at 7. Defendant moved to strike part of Exhibit A to Plaintiff's Reply as hearsay and conclusory under Rule 56(c)(2) and (c)(4), respectively. Def.'s Summ. J. Reply at 6. Defendant also objected to the Lovely Declaration as it did not attach referenced documents. Id. at 8. Neither party responded to the other's objections.
i. None of the challenged testimony constituted legal conclusions.
The first objections exchanged by the parties challenged the conclusory nature of opposing declarations. Pl.'s Summ. J. Resp. at 7; Def.'s Summ. J. Reply at 6. While the Court possesses the ability to strike evidence, on summary judgment the Court also weighs the evidence for materiality and credibility. Tolan , 134 S.Ct. at 1866. In this instance the parties' dispute regarding the conclusory nature of the others' declaration seems better-suited for the Court's ability to weigh the evidence rather than the Court's ability to strike it. Id.
Each statement challenged by the parties-Cathey's opinion regarding Plaintiff's ability to conduct business in Texas and Lovely's statements regarding his business-are not legal conclusions and do not presuppose legal standards. C.f. Lechuga v. Southern Pac. Transp. Co. , 949 F.2d 790, 798 (5th Cir. 1992) (striking a legal conclusion that a certain activity "was a benefit" sufficient to confer invitee status). Given none of the challenged statements intrude on the Court's legal analysis, none merit striking. Id.
However, the Court agrees with the parties' apparent motivation for the objections: that the statements were either vague or immaterial. CTMS owner Cathey was not shown an expert on the industry at large, much less Plaintiff's business model, so his opinion regarding Cross Trailers' future prospects in Texas carries little weight. Cathey Decl. ¶ 7. Likewise Lovely's testimony regarding Cross Trailers' mere "ability" to sell nationwide and expand its manufacturing facilities beyond Indiana is of uncertain value to establishing a likelihood of confusion in Texas now or in the future. Lovely Decl. ¶¶ 11-12. The Court will therefore apply due weight to this testimony depending on its apparent value. The Court will not, however, strike any of the declarations as conclusory.
ii. Part of Lovely's testimony constituted inadmissible hearsay.
Defendant also objected to Plaintiff's evidence as hearsay under FED. R. EVID. 801(c). Def.'s Summ. J. Reply at 4. Defendant identified the following as hearsay:
• Lovely's testimony: "I am aware ... end user customers have called in to Cross Trailers ... and asked for the location of dealers[.] We also receive sales inquiries from potential trailer dealers who have seen our products in our internet website[;]"
• Lovely's testimony: "I conferred with at least two Texas dealers ... who were aware of Cross Trailer Manufacturing[.] ... Jack Ricks ... informed me that initially[ ] he thought we were Cross Trailer Manufacturing[.] ... I was expressly informed by both of these prospective dealers that one of the reasons they were not yet interested in doing business with Cross Trailers, Inc.[ ] was that Cross Trailers Manufacturing had already been using the 'Cross' brand[;]"
*785 • Lovely's testimony: "I received a telephone call from Bryan Revis ... asserting that he purchased a [trailer] 'in ... San Antonio, Texas.' He had a warranty problem ... and called the dealer ... who told him to call the manufacturer. He [thought] we were the manufacturer[ ] and threatened to sue us[;]"
• Lovely's testimony: "I am aware of certain dealers ... which make a significant portion of their trailers sales via the internet to end users located very remote from the dealership. I am aware of this because of my discussions with those dealers and because of the warranty registration cards[;]"
• Exhibits A-C to the Lovely Declaration: a series of inquiries from Cross Trailers' site regarding purported CTMS trailers;
• Exhibit D to the Lovely Declaration: exemplar text messages from purported Cross Trailers customers in Texas; and,
• Exhibit E to the Lovely Declaration: a log of all calls made to Cross Trailers that appear to illustrate confusion with CTMS's products.
Def.'s Summ. J. Reply at 4-5. Again, Plaintiff did not respond to the objections.
Hearsay is an out-of-court statement offered for the truth of the matter asserted by the statement. FED. R. EVID. 801(c). Thus, obviously, a statement offered for a purpose other than the truth of the matter asserted therein is not hearsay. Nester v. Textron, Inc. , No. 1:13-cv-00920, 2015 WL 7272249, at *7 (W.D. Tex. Nov. 17, 2015) (Ezra, J.). In this vein, a question, which does not assert anything, is not hearsay. U.S. v. Lewis , 902 F.2d 1176, 1179 (5th Cir. 1990). If a statement is shown to be hearsay, the party offering the statement must establish an exception applies. U.S. v. Fernandez-Roque , 703 F.2d 808, 812 (5th Cir. 1983). Given Plaintiff did not respond to CTMS's objections the Court will consider only whether the challenged evidence is hearsay. Id. The Court will not scour the record and federal rules to find exceptions Plaintiff elected not to raise.
The Court agrees with Defendant that portions of Lovely's testimony in paragraphs five, eight, and nine are hearsay. Def. Summ. J. Reply at 3-5. The following statements by Lovely are out-of-court statements given for the truth of the matter asserted:
• "[S]uch sales inquiries have come from most of the United States[;]"[7]
• "I conferred with at least two Texas dealers at that trade show who were aware of Cross Trailer Manufacturing ... and its trailer products. Jack Ricks of TJR Trucking informed me that initially, he though we were Cross Trailer Manufacturing, when he saw our exhibit at the trade show.... I was expressly informed by both of these prospective dealers that one of the reasons they were not yet interested in doing business with Cross Trailers, Inc., was that Cross Trailers Manufacturing had already been using the 'Cross' brand on cargo trailers[;]" and,
• "[Bryan Revis] assert[ed] that he purchased a 'medium duty 20 foot dove tail trailer from Blue Star Trailer Supply in Floresville, here outside of San Antonio, Texas.' He had a warranty problem with the trailer and called the dealer, Blue Star, who told him to call *786 the manufacturer. He called us, thinking we were the manufacturer, and threatened to sue us for deceptive trade practice if we did not help him immediately."[8]
Lovely Decl. ¶¶ 5-9. Further, the Court agrees with CTMS that any statements included in Exhibits A, B, and D are hearsay statements to the extent they refer to originating in Texas, as those are offered for the truth of the matter asserted. Lovely Decl. Exs. A, B & D.[9]
The Court also agrees Exhibit E is inadmissible hearsay evidence. Def.'s Summ. J. Reply at 6. While CTMS argues the document should not be admitted under the business record exception in Rule 803(6)-an argument the Court finds unpersuasive-Plaintiff bears the burden of establishing an exception applies and did not respond to Defendant's objection. Fernandez-Roque , 703 F.2d at 812. Accordingly, as Exhibit E consists entirely of statements referring to calls from others, Exhibit E is inadmissible hearsay. Id. The Court grants CTMS's hearsay objections above as described.
The Court denies the remainder of CTMS's hearsay objections. First, the Court will not assume hearsay based on an implication of hearsay. See Cole v. Frank's Casing Crew & Rental Tools, Inc. , No. H-04-2566, 2005 WL 2647966, at *6 (S.D. Tex. Oct. 17, 2005) (noting when a court cannot be sure if hearsay is present or a hearsay exception applies, the party bearing the burden fails). Thus, CTMS failed its burden on any testimony that was not clearly testimony by another or a restatement of testimony by another.[10]
Second, hearsay must be a statement given for the assertion contained therein. Lewis , 902 F.2d at 1179. "[Q]uestions and inquiries[ ] are not hearsay because they do not, and [are] not intended to, assert anything." Id. This includes an implied assertion: " Rule 801, through its definition of statement, ... remov[es] implied assertions from the coverage of the hearsay rule." Id. Therefore, any questions included in Lovely's testimony are not hearsay.[11] The Court denies the remainder of CTMS's hearsay objections.
*787 iii. CTMS objects on a dated version of Rule 56(e).
Finally, Defendant objects to Lovely's declaration to the extent it failed "to attach sworn or certified copies of all documents referred to in the affidavit." Def.'s Summ. J. Reply at 8 (purporting to quote FED. R. CIV. P. 56(e) ). However, the rule CTMS quotes was amended in 2010 and no longer requires a party to attach sworn or certified copies of all documents referred to by the affidavit.[12] Instead, the modern Rule 56(e) authorizes a court discretion in responding to a party's failure to properly support an assertion of fact. FED. R. CIV. P. 56(e). The new location of the former Rule 56(e) requirement appears to be Rule 56(c)(1)(A). FED. R. CIV. P. 56(c)(1)(A), (c)(4) advisory committee's note to 2010 amendment. However, Rule 56 does not clearly bar a declaration's reference to omitted documents or materials not necessary to determine whether a genuine dispute exists, and CTMS did not brief the Court on any potential requirement. Id.[13]
Thus, CTMS's objections to the mention of "a proposed dealership agreement[,]" "a list of registrations[,]" and "warranty registration cards" under Rule 56(e) are improper. Def.'s Summ. J. Reply at 8; FED. R. CIV. P. 56(e). CTMS's objections cannot reasonably be interpreted to fall under the new Rule 56(e) either, as it authorizes a court's responses to a party's failure to properly support an assertion of fact. FED. R. CIV. P. 56(e). Nowhere in CTMS's Rule 56(e) analysis does it address the Court giving additional opportunity to address a fact, considering a fact undisputed, granting summary judgment on an unsupported fact, or issuing any other relevant order. Def.'s Summ. J. Reply at 8. Accordingly, the Court denies Defendant's objections under Rule 56(e). Under Rule 51(c)(1)(A), the Court will consider only the factual allegation the discussed documents exist, but will not credit the information alleged in such documents.
C. Likelihood of Confusion
This brings the Court to whether a likelihood of confusion exists between the parties' marks. Defendant seeks summary judgment because:
(1) Plaintiff does not sell its products bearing the Alleged Mark in the same geographical market as Defendant and (2) it is not probable that Plaintiff will use the Trademark in Defendant's market in the foreseeable future[.]
Def.'s Mot. Summ. J. at 10. CTMS's challenge therefore centers on the alleged geographic disparity of the parties' markets. Alliance for Good Gov. , 901 F.3d at 508. With no discussion of other factors, the burden is on Defendant to show why the Court should grant CTMS summary judgment on a single factor and deviate from the ordinary rule that "[t]he absence or presence of any one factor ordinarily is not dispositive[.]" Alliance for Good Gov. , 901 F.3d at 508-09 ; see also supra p. 2 (discussing how the Court reconciles Dawn Donut and modern Fifth Circuit precedent); Gorgeous Gals , 2017 WL 5016036, at *8 (considering Dawn Donut a defense).
*788 The Court begins with the recognition that "[l]ikelihood of confusion typically presents a contested fact issue[.]" Alliance for Good Gov. , 901 F.3d at 509. Among the Fifth Circuit's stated factors, geographic disparity is relevant in outlet, purchaser, and advertising media identity. Id. "Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception." Amstar Corp. v. Domino's Pizza, Inc. , 615 F.2d 252, 262 (5th Cir. 1980). Regular movement by consumers between geographically-distinct markets is also sufficient to find public confusion possible. Dunkin' Donuts Inc. v. Mercantile Ventures , No. EP:91-cv-00154-B, 1992 WL 156566, at *10 (W.D. Tex. Jan. 8, 1992) (Bunton, J.). Even limited overlap between end users is sufficient to find a dispute on confusion. Gorgeous Gals , 2017 WL 5016036 at *8.
Both Plaintiff and Defendant operate by selling trailers to dealers, who in turn sell the trailers to end users. Lovely Decl. ¶ 2; Cathey Decl. ¶ 2. Confusion detrimental to Plaintiff's business can therefore occur twice: once if dealers confuse the product and a second time if end users confuse the product. See Quantum Fitness Corp. v. Quantum LifeStyle Centers, LLC , 83 F.Supp.2d 810, 814 (S.D. Tex. 1999) (noting demand from end users results in demand from dealers). Advertising confusion-whether to dealers or end users-is also relevant in this analysis. Alliance for Good Gov. , 901 F.3d at 509. The Court therefore analyzes Defendant's challenge in three parts: dealer, end user, and advertising geographic overlap.
i. The degree of the parties' dealership-overlap is unknown.
Plaintiff's dealers were, at the relevant time, located in approximately eighteen states concentrated in the Northeast, Midwest, and northern South. Lovely Decl. ¶ 10. Defendant's dealers appeared to be national as well, with sales recorded across the continental United States. See infra note 18 (listing states). The overlapping national dealership bases of the parties leave the Court with a dispute to survive summary judgment. Amstar Corp. , 615 F.2d at 262.
CTMS repeatedly represents to the Court that its market is in "Texas and the surrounding states." Def.'s Mot. Summ. J. at 5. However, none of the documents in the summary judgment record reflect that proposition. FED. R. CIV. P. 56(c)(1)(A). The closest document is Exhibit A-6 to Defendant's Summary Judgment Motion, which CTMS states is a "Summary of Exhibit D-1." Def.'s Mot. Summ. J. at 2. Exhibit D-1 is a properly-authenticated document from Defendant which shows "the trailers Defendant sold ... as well as the dealers it sold the ... trailers to." Cathey Decl. ¶ 3. However, Exhibit D-1 does not include addresses for many of these dealers,[14] while A-6, a purported summary of D-1, does.[15] CTMS's explanation for the sudden appearance of this critical location information can be found in the Declaration of Michael C. Roberts, Defendant's counsel, who states: "Exhibit 6 to this Declaration is a summary prepared by a paralegal at Jackson Walker ... seeking to identify, through the use of internet and public record searches, the location of customers identified in [Exhibit *789 A-6]." Def.'s Mot. Summ. J., Ex. A (Roberts Decl. ¶ 9). Stated in modern parlance, CTMS's counsel's paralegal googled the dealers listed in a proper record and added whatever result Google provided to the summary. Id.
Defendant did not request the Court take judicial notice of the locations of these dealers nor provided the Court any independent verification of them. C.f. Def.'s Mot. Summ. J. at 3, n. 7 (asking the Court take judicial notice of the distance between Arthur, Illinois and Waco). Thus, short of conducting its own internet searches similar to that of defense counsel's paralegal, the Court lacks any verification of this data. Id. Without any testimony regarding the authenticity or accuracy of the unnamed paralegal's unspecified "internet and public record searches[,]" Exhibit A-6 lacks a proper foundation.[16] Roberts Decl. ¶ 9. Even then, Exhibit A-6 does not list locations for all dealers to whom Defendant sold. See Cust. List Summ. at 3-5 ("Murry Trailers", "Waldon Trailers"). The Court simply cannot rely on this document as a representation of Defendant's dealership base.
The second-closest document Defendant provides is a printout from StatisticalSurveys.com, which Cathey states "is generally relied on by trailer manufacturers in the conduct of their business." Cathey Decl. ¶ 6. Cathey elaborates that StatisticalSurveys.com receives the information by dealer reporting.[17] Id. ("one sale of Plaintiff's trailer was reported by one dealer"). Dealer reporting is useful to show where sales likely occurred but cannot be interpreted to suggest where sales have not occurred given the risk of a dealer not reporting sales. Regardless, the webpage printout does show some overlap of dealerships between the parties.[18]
According to Defendant's evidence, the parties' dealerships overlapped in at least twenty-three states in 2016-17. See supra note 18 (listing states). While true no dealership overlap occurred in Texas according to this document, the parties did not direct the Court to any requirement than infringement occur in the state of suit. Overlaps within a state are sufficient to create a likelihood of confusion. See Gorgeous Gals , 2017 WL 5016036, at *8 (finding distinct markets in San Antonio and Austin were still geographically near enough to create a likelihood of confusion). Therefore, on this prong, the Court finds a sufficient dispute to survive summary judgment.
*790 ii. End user overlap is limited but present.
The parties do not dispute the limited number of instances of end user overlap between them. Pl.'s Summ. J. Resp. at 3; Def.'s Summ. J. Reply at 9. They do dispute, however, the relevance of this fact in the Court's confusion analysis. Id. Plaintiff argues "[i]f ... both marks are 'used' in the same area, a likelihood of confusion may exist, regardless of where the goods bearing the mark are sold." Pl.'s Summ. J. Resp. at 12 (no citation provided). Defendant responds "[t]he 'use of the marks' is where the trailers containing the Alleged Mark are manufactured and sold , not where Plaintiff or Defendant's products end up in the hands of end users[.]" Def.'s Summ. J. Reply at 9 (emphasis in original) (no citation provided).
The Fifth Circuit considers end user confusion in a likelihood of confusion claim and the Court thus cannot accept Defendant's contention to the contrary. In Xtreme Lashes, LLC v. Xtended Beauty, Inc. , 576 F.3d 221, 230 (5th Cir. 2009), the Fifth Circuit was presented with competing beauty product manufacturers who sold their product to health and beauty professionals, who in turn sold the products to end users. The Court found, "[u]ltimately, both companies seek to land their kits in the hands of trained cosmetologists, and have their products affixed to customers' lashes." Id.[19] End user confusion is relevant in this analysis. Id.
Considering end user confusion, according to the Statistica lSurveys printout provided by Defendant, both parties' trailers were registered by end users in Arizona, Arkansas, Colorado, Florida, Georgia, Idaho, Kansas, Minnesota, Mississippi, Missouri, Montana, North Carolina, New Mexico, Tennessee, and Texas in 2016 alone. Surveys Rep. at 1-7. Incorporating the following year, end users registered both parties' trailers in Alaska, California, Delaware, Iowa, Massachusetts, Nebraska, North Dakota, Ohio, Pennsylvania, and South Dakota as well. Id. The states in which the parties' trailers overlapped constituted forty-seven percent of Cross Trailers', and ninety-five percent of CTMS/Salvation's, sales in 2016 and 2017. Id. However, as CTMS implicitly notes, Plaintiff's main sales states (Illinois, Iowa, Michigan, New York, Ohio, and Pennsylvania make up eighty-one percent of sales) do not overlap with CTMS/Salvations' (Texas makes up eighty-eight percent of sales). Id.
Regardless, the evidence shows an overlap, even if limited, between the parties' customers. Gorgeous Gals , 2017 WL 5016036, at *8. Defendant is correct the parties do not compete in their major markets. Def.'s Summ. J. Reply at 9. However, Plaintiff correctly notes end user overlap among most states in which the parties' trailers are eventually registered. Pl.'s Summ. J. Resp. at 3. The Court is not aware of a requirement the infringement occur only in the party's primary market. C.f. Gorgeous Gals , 2017 WL 5016036, at *8 (denying summary judgment despite the parties' agreement they were in separate, insular markets). Limited overlap of end users is sufficient to preclude summary judgment. Id. The second factor is sufficiently disputed to survive summary judgment.
iii. Both parties maintain a national advertising presence.
Finally, the Court must consider whether the parties advertise "in the same *791 or similar media[.]" Alliance for Good Gov. , 901 F.3d at 512. Plaintiff claims both it and Defendants advertise nationally and attended national sales conferences hosted by organizations like the NATDA. Pl.'s Summ. J. Resp. at 3-4. Defendant does not respond to the allegation in its Reply, though it does argue in its Motion "Plaintiff does not specifically direct its advertisements to Texas." Def.'s Mot. Summ. J. at 10.
"[A]dvertising in similar media [may be] an indication that consumers might be confused as to the source of similar products." Am. Rice, Inc. , 518 F.3d at 332. An absence of sufficient evidence on this prong ordinarily results in a 'neutral' weight.[20] In the case at bar, Plaintiff maintains social media advertising and a website. Def.'s Mot. Summ. J., Ex. A-2 at 4. It also advertises nationally in a trade magazine and at trade shows. Id. Defendant attends at least one of the same national trade shows. Lovely Decl. ¶ 8. There is little other information regarding the advertising presence of the parties.
The evidence provided shows advertising overlap between Cross Trailers and CTMS. Id. The parties advertised in the same geographic area (nationally) using the same means (NATDA trade shows outside of Texas). See Alliance for Good Gov. , 901 F.3d at 512 ("both organizations advertised in New Orleans newspapers using the same means[ ]"). The parties also advertise online including social media. See Gorgeous Gals , 2017 WL 5016036, at *7 ("both companies use the Internet extensively to advertise, including their respective websites and also sites like Facebook and Yelp[ ]"). Despite Defendant's claim, the evidence does not show the parties advertised in limited and distinct geographic markets. C.f. John R. Thompson , 366 F.2d at 111-12 (noting neither party advertised nationally and one party advertised only in Dallas / Fort Worth while the other never advertised within Texas). A genuine dispute exists on this prong sufficient to survive summary judgment.
In sum, the relevant geographic factors create a disputed likelihood of confusion between the marks at bar. The dealership bases of the parties, to the extent known, indicate significant overlap across much of the country, even if not Texas. See fn. 16, supra (noting overlap according to Defendant's Exhibit D-3). Further, while the parties' major consumer markets do not overlap, in 2016 and 2017 approximately fifty percent of Plaintiff's trailers were registered in states where Defendant's trailers were also registered. Id. Finally, the parties attended the same national trade shows and advertised using similar media without limiting their advertising to distinct, insular regions. Id. Indulging every inference in favor of Cross Trailers, the Court finds sufficient dispute to survive summary judgment.
IV.
CONCLUSION
Thus, the Court concludes CTMS's Motion for Summary Judgment should be denied. Dawn Donut must be applied in this Circuit absent appellate direction to the contrary, though under the factor analysis Defendant needs demonstrate a stark geographic disparity meriting the dispositive Dawn Donut analysis. Gorgeous Gals , 2017 WL 5016036, at *8. Without the stricken evidence, the Court finds sufficient dispute exists to survive summaryjudgment *792 under Dawn Donut . Alliance for Good Gov. , 901 F.3d at 509. In geographic terms, the parties' dealership networks, end users, and advertising each overlap. While the degree of each overlap is limited, small but concrete examples of likely confusion are sufficient to survive summary judgment. Gorgeous Gals , 2017 WL 5016036 at *8. Accordingly, Defendant's Motion is hereby DENIED .

In this section any facts stated are, unless otherwise noted, alleged by Plaintiff, uncontested by the parties at this stage, and presumed true in favor of Plaintiff. Fed. R. Civ. P. 56(e)(2) ; Int'l Shortstop, Inc. v. Rally's, Inc. , 939 F.2d 1257, 1263-65 (5th Cir. 1991).

See e.g. Continental Motors Corp. v. Continental Aviation Corp. , 375 F.2d 857, 862 (5th Cir. 1967) ("Time, tide, and the relentless movement of the copywriter's pen makes what we once said no longer controlling, not so much from change in the law, but from change in economic fact. Not the least of these is the restless, undulating habits of our air-minded, air-traveling public, many of whom for sport, or pleasure, or business, or an (sic) areonautical combination of them, hop across the nation relying, as they must, on dependable service at airports small and large. And it is here that modern, intense advertising creates the 'image' upon which the public depends or may depend[ ]").

Thompson, Derek, The History of Sears Predicts Nearly Everything Amazon Is Doing ; The Atlantic (Sept. 25, 2017), https://www.theatlantic.com/business/archive/2017/09/sears-predicts-amazon/540888/.

See Alliance for Good Gov. , 901 F.3d at 508 (omitting Dawn Donut standard when the parties were indisputably in the same geographic area, yet not considering the factor as indicative of likely confusion); Holloway , 366 F.2d at 112 (considering Dawn Donut as solely rebutting any other factor in whether confusion was likely); Am. Rice, Inc. , 518 F.3d at 329 n.20 (discussing briefly the standard but finding it inapplicable since the geographic markets overlapped).

It is not binding on this Court, but the Second Circuit also moderated its tone following Dawn Donut. See Brennan's, Inc. v. Brennan's Restaurant, LLC , 360 F.3d 125, 135 (2nd Cir. 2004) ("substantial geographic separation remains a significant indicator that the likelihood of confusion is slight[ ]") (citing Dawn Donut in the same paragraph).

Am. Rice, Inc. , 518 F.3d at 329 ; see also Union Nat. Bank of Texas , 909 F.2d at 843 ("A senior user [may not exclude] others in areas where he does not currently do business nor is likely to do business in the future").

Lovely indicated the information was obtained by "ask[ing] where they are calling from[.]" Lovely Decl. ¶ 5.

Any parentheticals omitted from these quotes are considered hearsay as well.

Ex. A ("I have a 2015 Cross (sic) trailer bought in April-May 2015 that I'm getting ready to sell"); Ex. B ("I LIVE IN TEXAS"); Ex. D ("Terry, this is Kevin[ ] in Allen Texas. Address is 1141 Sophia St. Allen, TX 75013. 515-556-2325[;]" "Hey Terry, this is Kevin down here in Allen Texas[;]" "Work done on Kevin Brenner's trailer in Allen Texas. 1141 Sophia St. Allen Tx. 75013"). The Court notes CTMS' objection to the Lovely Decl., Exhibit A is ultimately meaningless, as Defendant produced the same document as an attachment to its summary judgment motion and Plaintiff did not object or challenge that exhibit. Def.'s Mot. Summ. J., Ex. A-4 at 1.

E.g. Lovely Decl. ¶ 5 ("I am aware that on many occasions potential end user customers have called in to Cross Trailers, Inc., having seen our internet web site"), ¶ 9 ("I received a phone call from Bryan Revis"), and ¶ 11 ("I am aware of certain dealers of ours which make a significant portion of their (sic) trailers sales via the internet to end users located very remote from the dealership. I am aware of this because of my discussions with those dealers and because of the warranty registration cards provided to us from those dealers"). While it could be inferred Lovely learned end users told him they saw the web site and their name, Lovely could also have learned the information through non-hearsay means (i.e. phone number listed on website, caller ID).See also Exhs A-C (the origin of the inquirers' emails, addresses, and phone numbers is not clear).

E.g. Lovely Decl. ¶ 5 ("potential end user customers have called in ... and asked for the location of dealers where they can purchase our products"); Ex. A ("Is the remainder of the three year (sic) manufacturers warranty transferable to the new owner?"); Ex. B ("CAN [5X10 SA] BE HAD WITH V FRONT FOR HIGHWAY USE?") ("WHAT IS (sic) LEAD TIME ON PRODUCTION RECOMMENDED DEALER") (emphasis in original). The questions within Exhibit E might fit this rule but, as discussed supra, the entire document is hearsay as recorded by the Cross Trailers employee(s).

Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record[ ]").

(stating the Court will not consider materials not a part of the record).

E.g. Sales Report at 1 (271 Trailers, AB Trailers LLC, Action Powersports, Barger Allsports, Big Red's Equipment Sales & Rental, etc.).

Listing the following locations: 271 Trailers (Paris, Tx), AB Trailers LLC (Albuquerque, NM), Action Powersports (Tulsa, Ok), Barger Allsports (Waco, Tx), and Big Red's Equipment Sales & Rental (Granbury, Tx).

Lusk v. Wells Fargo Bank, Nat. Ass'n , 2012 WL 1841359, at *2 (E.D. Tex. May 21, 2012) ; Sentinel Integrity Solutions, Inc. v. Mistras Group, Inc. , 2011 WL 13258115, at *5 (S.D. Tex. Sep. 1, 2011) (in context of a Daubert/Robinson reliability challenge).

The Court notes StatisticalSurveys lists two parties-Cross Trailers and Salvation Trailers-yet CTMS cites the document in referring to "the sales made by Defendant to its customers." Def.'s Mot. Summ. J. at 5. The Court presumes, then, that Salvation Trailer and CTMS are interchangeable on this document. If the document only reflects Salvation's dealer base and not CTMS', then CTMS utterly failed to provide evidence of its dealer base and failed its burden of production on summary judgment. Matsushita Elec. Indus. , 475 U.S. at 586, 106 S.Ct. 1348.

Compare Surveys Rep. at 1 (showing dealership overlaps in unknown cities in Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Iowa, Kansas, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New Mexico, North Carolina, Ohio, Pennsylvania, South Dakota, and Tennessee) with Lovely Decl. ¶ 10 (stating Cross Trailers maintained dealers in Alabama, Iowa, Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, Mississippi, Nebraska, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia, Wisconsin, and West Virginia).

See also Gruma Corp v. Mexican Restaurants, Inc. , 497 F. App'x 392, 396 (5th Cir. 2012) ("although the parties do not use the same retail outlets to sell their goods and services, the consumers who purchase Gruma's retail products substantially overlap with the consumers who purchase Mexican Restaurant's products[ ]").

See Am. Rice, Inc. 518 F.3d at 332 ("[b]ecause ARI has spent millions in advertising and promoting its brand and PRMI has not advertised at all, this factor is rendered irrelevant[ ]"); Vesta Corp. , 2016 WL 8710440, at *9 ("[t]he record contains scant evidence on other advertising[;] [t]his factor is neutral[ ]").