CARLTON, J., for the Court.
¶ 1. Jimi Levar Watts was indicted on January 30, 2006, by a grand jury in George County, Mississippi, for possession of a controlled substance. After being convicted by a jury on October 19, 2006, Watts was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections and ordered to pay a fine of $50,000, as well as lab fees and court costs. He now appeals that verdict and raises two issues for our consideration. He first claims that the trial court erred in denying his motion for directed verdict of acquittal, claiming that the state had not presented enough evidence at trial to prove his guilt beyond a reasonable doubt. Second, he contends the trial court erred by allowing testimony regarding information received from a confidential informant. Finding no error, we affirm the circuit court.
FACTS
¶ 2. On May 18, 2005, Keith Churchwell, a police officer assigned to the South Mississippi Narcotics Task Force, saw Watts driving his wife’s black Ford Expedition. Officer Churchwell was driving to the sheriffs department to meet with fellow officers when he saw Watts. Shortly after Officer Churchwell arrived at the sheriffs department, he and other officers received information from a confidential informant that Watts was involved in illegal drug activity in The Grove, an area in Lucedale, Mississippi, known for such activity. Officer Churchwell testified that approximately fifteen or twenty minutes passed between his seeing Watts driving the Expedition and the confidential informant giving them the information.
¶ 3. Officer Churchwell, along with Stacy Eubanks, an agent with the Mississippi Bureau of Narcotics, and fellow officers Bobby Fairley and Tony Keel left the sheriffs department and went to The Grove. There, they observed the black Expedition that Watts had been driving. The officers approached Watts, who was sitting on a tire in front of the vehicle. Watts was in a vacant lot, approximately ten to twelve feet away from the Expedition. Agent Eubanks spoke to Watts, patted him down as a safety precaution, and asked him if he could look inside the vehicle. Watts agreed to allow Agent Eu-banks to search the car. Eubanks walked toward the vehicle, however, Watts told him to wait. Watts explained to Agent Eubanks that he had just gotten the vehicle out of the mechanic’s shop, and he did not know what was inside the vehicle. Watts makes no claim on appeal that the search of his car was illegal.
¶ 4. Upon looking in the driver’s side window, Agent Eubanks noticed a brown paper bag on the driver’s seat. The bag was rolled down so that Eubanks was able to see immediately that the bag contained a plastic bag with cocaine inside it. Agen-tEubanks retrieved the bag of cocaine from the vehicle and handed it over to Officer Churchwell. The officers arrested Watts and allowed his wife to come to the scene to pick up the vehicle. They did not question her about the drugs found in the car. They did not attempt to obtain fingerprints from the bag of cocaine, nor did they follow up on Watts’s assertion that the car had been in the mechanic’s shop just before the officers arrived.
¶ 5. Watts had a jury trial on October 19, 2006. At the close of the state’s case, *367 Watts moved for a directed verdict of acquittal, which the circuit court denied.
DISCUSSION
¶ 6. Watts raises two issues for our consideration on appeal. He first claims that the trial court erred in denying his motion for directed verdict of acquittal, claiming that the state had not presented enough evidence at trial to prove his guilt beyond a reasonable doubt. Second, he finds error with the trial court for allowing hearsay testimony regarding information received from a confidential informant.
I. Whether the trial court erred in denying Watts a directed verdict of acquittal.
¶ 7. The standard of review this Court applies to motions for directed verdict or for JNOV is as follows:
Requests for a directed verdict and motions JNOY implicate the sufficiency of the evidence. The standard of review for the legal sufficiency of the evidence is well-settled: We must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Gleeton v. State, 716 So.2d 1083, 1087 (¶ 14) (Miss.1998) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 8. Watts claims that the prosecution did not present sufficient evidence to support his conviction beyond a reasonable doubt. The prosecution made its case on the theory of constructive possession, “a legal fiction used by courts when actual possession cannot be proven.” Fultz v. State, 573 So.2d 689, 690 (Miss.1990). In Mississippi, proximity to the contraband along with “any other scintilla of evidence of possession” may establish constructive possession. Id. The test to be applied in a constructive possession case is as follows:
[T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subjected to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry v. State, 249 So.2d 414, 416 (Miss.1971).
¶ 9. In Mississippi, “one who is the owner in possession of the premises is presumed to be in constructive possession of the articles found in or on the property possessed.” Pool v. State, 483 So.2d 331, 336 (Miss.1986) (quoting Hamburg v. State, 248 So.2d 430, 432 (Miss.1971)). Watts asserts that because he did not own the car where the drugs were found, the state was required to present additional evidence to show that he was in constructive possession of them. Our supreme court has held that “when the defendant is not the owner of the premises the state must show additional incriminating circumstances to justify a finding of constructive possession. Id. (citing Boches v. State, 506 *368 So.2d 254, 259 (Miss.1987)). The cocaine was not actually found on Watts himself, but rather in the car he had been seen driving. Further, Watts was not in the car at the time the officers approached him.
¶ 10. Watts relies heavily on Fultz, which is slightly similar to the case before us. In Fultz, the defendant was stopped by police officers while driving a car owned by his sister. The defendant was arrested, and upon an inventory search of the vehicle, the officers found drugs in a duffle bag in the trunk. The officers did not dust for fingerprints on the trunk of the car or on the bags containing the drugs. They also failed to question the owner of the vehicle when she arrived to retrieve it. The supreme court in Fultz held that “poor police work, and the absence of any evidence connecting the defendant with the trunk or any of its contents” warranted a reversal of the conviction. Id. at 691.
¶ 11. Watts’s case differs in two important ways from Fultz. First, while the car Watts was driving was in fact titled in his wife’s name, testimony at trial revealed that Watts drove the car on a regular basis and was the only person the officers had ever observed driving the car. The officers could easily recognize the car because of its color and distinctive Nascar tag. Second, the drugs were not found in the trunk or in any other concealed place in the car. Rather, Agent Eubanks found the cocaine on the driver’s seat of the car. The officers testified that the bag was not crumpled, as they would expect if someone had been sitting on it, but it was rolled down so that the drugs were visible from outside the car.
¶ 12. Because he was not the actual owner of the car, Watts claims more evidence was needed to convict him. Watts cites several cases in support of his position. Of the cases he mentions, only one was reversed for a lack of additional incriminating circumstances. In Hudson v. State, 362 So.2d 645, 647 (Miss.1978), the Mississippi Supreme Court reversed the convictions of Vincent and Randolph Hudson for possession of marijuana. One of the defendants was asleep in a car when police arrived and officers found drugs under the hood of the car. Id. at 646 The other defendant was inside a café near where the car was parked. Id. The car belonged to their mutual friend and traveling companion, who was never questioned. Id. The supreme court in that case found that there was not enough evidence to convict them because they did not own the car, the drugs were hidden under the hood, there was no proof of dominion and control over the marijuana, and there was no proof of other incriminating evidence. Id. at 647.
¶ 13. Though Watts was outside the vehicle when the officers approached, he had been seen driving the car only minutes before they arrived. His proximity to the vehicle showed that he exercised dominion and control over it and its contents. He was in an area known for drug activity, in close proximity to a vehicle a police officer had seen him driving earlier that day. The facts revealed that Watts regularly drove his wife’s Expedition. The drugs were not hidden within the car; rather, they were situated in an obvious position on the driver’s seat. Watts had to place the bag of cocaine there when he exited the car, or he sat on it while driving. The State presented sufficient evidence at trial that a reasonable and fair-minded jury could find Watts guilty of possession of a controlled substance. Therefore, this assignment of error fails.
II. Whether the trial court erred in allowing hearsay testimony regarding the confidential informant’s call to police.
¶ 14. Before trial, Watts filed a motion to exclude hearsay testimony relat *369 ed to the confidential informant and testimony related to why police officers went to The Grove area. The confidential informant was not called as a witness, and Watts objected to testimony regarding the information as being hearsay exclusions and violating his Sixth Amendment right to confrontation. The circuit court entered an order limiting the State’s testimony related to the informant “to the fact that information was received concerning illegal narcotic activity and the Defendant, Jimi Levar Watts.” That order prohibited the State from presenting testimony that information was received from a confidential informant or what the informant actually told officers.
¶ 15. In Stubbs v. State, 878 So.2d 130, 134(¶ 7) (Miss.Ct.App.2004), this Court held as follows:
“The standard of review for this Court regarding the admissibility of evidence is abuse of discretion of the trial court and reversal may be had only where that discretion has been abused. Unless the trial judge’s discretion is so abused as to be prejudicial to the accused, an appellate court will not reverse.... However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence.”
¶ 16. At trial, Agent Eubanks stayed within the parameters set by the circuit court. He testified: “BasicallyU we had received information about Jimi Watts concerning illegal narcotics activity on South Pine Street there in The Grove in Luce-dale.” Officer Churchwell testified at trial that the officers “received some information of illegal narcotics activity in The Grove area concerning Jimi Watts.” The district attorney mentioned the confidential informant in closing arguments, saying: “We have testimony from officers that the defendant was seen driving this exact vehicle by himself maybe 15 minutes before information was received regarding illegal narcotic activity and the defendant.” Watts claims these statements are hearsay, and the circuit court had already ordered that the statements be limited. Therefore, Watts contends these statements should not have been admitted at trial.
¶ 17. Mississippi Rule of Evidence 801(c) defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Here, the testimony in court regarding the confidential informant’s statement was not offered to prove that Watts was actually involved in criminal drug activity. Rather, it was offered to explain why police officers went to the scene in the first place. Therefore, the statement was not hearsay. “[WJhen an officer’s testimony about the substance of a conversation with an informant is offered to show the reason for the officer’s presence at the scene of investigation, an informant’s tip is admissible to show why an officer acted as he did and was present at the said 'scene.” Jackson v. State, 935 So.2d 1108, 1114(¶9) (Miss.Ct.App.2006) (citing Clemons v. State, 732 So.2d 883, 888(¶ 19) (Miss.1999)). The circuit court did not err in allowing this testimony.
¶ 18. Further, the circuit court instructed the jury regarding the testimony related to the confidential informant. The jurors were instructed as follows:
[T]he testimony concerning information received by law enforcement as to drug activity involving Jimi Watts may not be considered by you as evidence of guilt in this case. The Court further instructs the jury that this information may be considered by you only as to the reason for the officers’ presence near the defendant at the time of the arrest.
*370 We presume that jurors follow the instructions of the circuit court. King v. State, 857 So.2d 702, 724(¶ 62) (Miss.2003). Watts has not overcome this presumption, and this assignment of error fails.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $50,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, CONCUR.