# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01455-COA

LADALE AIROSTEVE HOLLOWAY A/K/A            APPELLANT
LADALE A. HOLLOWAY A/K/A DALE
HOLLOWAY

v.

STATE OF MISSISSIPPI                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2017 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 10/16/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.    A police officer found Ladale Airosteve Holloway passed out at the wheel of a vehicle sitting in an intersection on Highway 90 in Biloxi.  Holloway had illegal drugs and drug paraphernalia in his lap and in the vehicle, and he fled when awoken by police officers.  The total street value of the drugs was later determined to be more than twenty thousand dollars. Holloway was convicted of three counts of possession of a controlled substance with intent

to distribute, as a "little" habitual offender and as a second or subsequent offense.[1] On appeal, he challenges the admission of text messages received by a phone found in the vehicle, which were recent solicitations to purchase illegal drugs. Holloway claims the messages were hearsay and not properly authenticated. We find no error and affirm.

## STANDARD OF REVIEW

¶2. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. *Young v. Guild*, 7 So. 3d 251, 261 (¶34) (Miss. 2009). Furthermore, a conviction will not be reversed "unless the trial court abused its discretion in a manner that was prejudicial to the accused or adversely affected a substantial right of the accused." *Boyd v. State*, 175 So. 3d 1, 4 (¶12) (Miss. 2015).

## DISCUSSION

### 1. Authentication

¶3. Holloway challenges the authenticity of the text messages found on a phone that was found in the vehicle with him, along with a large quantity of illegal drugs as well as distribution paraphernalia.

¶4. At trial, the lead investigator testified that he obtained a warrant to search the contents of a phone found in the vehicle with Holloway. When the investigator started to describe what he found on the phone, Holloway objected, contending that "the phone itself has not

---

[1] Miss. Code Ann. § 41-29-147 (Rev. 2013); Miss. Code Ann. § 99-19-81 (Rev. 2015).

2

been authenticated as to who owns [it]" and that its contents were hearsay. The objection was sustained, but the court allowed the State to attempt to lay a foundation. The State then, over objection, elicited testimony that the phone was found in the vehicle with Holloway and contained a photograph of Holloway that appeared to have been taken while he was holding the phone, a "selfie." Holloway's objection here was to relevance, authentication, and the best evidence rule. The objection was overruled. Eventually, the lead investigator was asked to describe the content of the text messages found on the phone. Holloway again objected, but the only bases specified were that it was "hearsay," "pure speculation," and "pure anything else I can think of." Holloway also appeared to refer back to his prior authenticity objection by asserting it was "a phone anybody could have owned." The objection was overruled, and the investigator proceeded to describe numerous text messages found on the phone that appeared to be from people seeking to purchase illegal drugs.[2]

¶5.     Holloway bases his argument on *Smith v. State*, 136 So. 3d 424, 432-35 (¶¶19-26) (Miss. 2014), where our supreme court discussed the issues surrounding the authentication of certain "electronic communications." But *Smith* concerned the admissibility of posts on

---

[2] The only messages that were read to the jury were incoming solicitations; the responses sent from the phone, if any, were not described. Illustrative examples include as they appear in the trial transcript; the actual messages are not found in the record:

*Hey, I got 100 for the two and a half?*

*Okay. So a quarter ounce for $250?*

*Hey, what can you do for 400? Can you do a half zip?*

3

a popular social-networking website—the account claimed to be associated with Smith could have been created by anyone, or anyone with the login and password to the account could have posted the message from anywhere in the world. *See id.* at 432-33 (¶19). Holloway's case concerns text messages, which ordinarily can be sent only by a single device in the physical possession of the sender. *See Commonwealth v. Koch*, 39 A.3d 996, 1004-05 (Pa. Super. Ct. 2011) (affirmed by an equally divided court, 106 A.3d 705 (Pa. 2014)). The association of a cell phone number with a particular individual is far stronger than it is with an e-mail address, a social media account, or a traditional "land line" telephone, all of which are more often shared or more easily accessed by others. *See Butler v. State*, 459 S.W.3d 595, 601 (Tex. Crim. App. 2015). Thus many of the authentication issues with social media posts or e-mail are not present with text messages. *See Smith*, 136 So. 3d at 432 (¶18) ("[T]he circumstantial evidence that tends to authenticate a communication is somewhat unique to each medium."). Although our supreme court has noted that the mere fact "that a text message emanates from a cell phone number assigned to the purported author . . . without more[] has [not] typically been regarded as sufficient to support a finding of authenticity," it is surely easier to make a prima facie case to authenticate the authorship of a text message than for the Facebook posts at issue in *Smith*. *Id.* at 433 (¶20).

¶6.     That being said, it is beside the point in this case. The probative value of the messages in *Smith* depended on Smith being their author, a point which was not shown by the prosecution in that case. *See id.* at 434-35 (¶25). But here the relevance of the messages

4

found on Holloway's phone does not depend on the identity of the senders. The messages were relevant because they were solicitations that tended to show Holloway possessed drugs with the intent to distribute them. Holloway was found in the driver's seat of the vehicle, alone; large quantities of illegal drugs and a digital scale were also found in the vehicle; methamphetamine pills were found on Holloway's person (some in his lap and one in his pocket) and also in the center console with the phone; a "selfie" photograph of Holloway was found on the phone; the messages were all dated within the ten days prior to Holloway's arrest; and Holloway fled upon being discovered. In their totality, the circumstances more than made a prima facie showing that the messages were what the State claimed they were—solicitations to sell drugs that Holloway had received. Once there is a prima facie showing of authenticity, the evidence goes to the jury, which will then determine the ultimate question of whether the evidence is what it was claimed to be. *Young v. Guild*, 7 So. 3d 251, 262 (¶36) (Miss. 2009). We can find no error in the admission of the text messages.

### 2. Hearsay

¶7.     Next, Holloway contends that the text messages were inadmissible hearsay. Hearsay is a statement made that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). The text messages at issue were solicitations from unknown persons to purchase illegal drugs.

¶8.     This case is analogous to *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990),

5

albeit with a slight technological update. When Lewis was arrested, a police officer seized his pager. *Id*. While in the possession of the police, the pager beeped, indicating that someone wanted its intended possessor to return a call. *Id*. An officer did so, posing as Lewis, and an unidentified person on the other end asked, "Did you get the stuff?" *Id*. Lewis contended the question was hearsay. *Id*. The Fifth Circuit disagreed, noting that hearsay is defined as a statement, which the rules of evidence further define as an assertion. *Id*. The question was not an assertion, even if it contained implicit factual assumptions. *Id*. The court explained that "[w]hile 'assertion' is not defined in the rule, the term has the connotation of a positive declaration." *Id.* (citing Webster's Ninth New Collegiate Dictionary 109 (9th ed. 1985)). The assumptions underlying the questions, although they may be called "implicit" or "implied" assertions, are not hearsay because they are not positive declarations. *See id.*

¶9.    The United States Court of Appeals for the District of Columbia Circuit reached a similar result in *United States v. Long*, 905 F.2d 1572 (D.C. Cir. 1990). While searching Long's apartment, a police officer answered the phone, and the unknown caller asked whether Long "still had any stuff," "a fifty," which was apparently an offer to purchase crack cocaine. *Id.* at 1579. Long challenged the statements as hearsay, but the District of Columbia Circuit disagreed, explaining that the questions were nonhearsay because they were not intended to be assertions and were inherently more reliable as a result:

> The caller's words, thus, cannot be characterized as an "assertion," even an implied one, unless the caller intended to make such an assertion. While

6

Long's criticism of a rigid dichotomy between express and implied assertions is not without merit, it misses the point that the crucial distinction under rule 801 is between intentional and unintentional messages, regardless of whether they are express or implied. It is difficult to imagine any question, or for that matter any act, that does not in some way convey an implicit message. One of the principal goals of the hearsay rule is to exclude declarations when their veracity cannot be tested through cross-examination. When a declarant does not intend to communicate anything, however, his sincerity is not in question and the need for cross-examination is sharply diminished. Thus, an unintentional message is presumptively more reliable. *See United States v. Groce*, 682 F.2d 1359, 1364 (11th Cir. 1982); 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(a)[01] (1988). Evidence of unintended implicit assertions is "[a]dmittedly . . . untested with respect to the perception, memory, and narration (or their equivalents) of the actor," but "these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds." Fed. R. Evid. 801 advisory committee note.

*Id.* at 1579-80 (brackets in original; footnote omitted).

¶10. We find the reasoning in *Long* and *Lewis* persuasive. The text messages at issue in today's case were solicitations to purchase drugs; they were neither positive declarations nor intended to be assertions. Thus, they were not "statements" as contemplated by Rule 801, and there was no error in overruling Holloway's hearsay objection.

### 3. Harmless Error

¶11. Although we find no error in the admission of the text messages, we note that Holloway was caught red-handed with a large quantity of drugs—a total street value over twenty thousand dollars—as well as distribution paraphernalia, including a digital scale. Any error in the admission of the text messages was harmless beyond a reasonable doubt.

¶12. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, WILSON, GREENLEE**

7

**AND TINDELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**