# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00331-COA

**CARLOS DOMINIQUE ALLEN A/K/A CARLOS ALLEN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:            03/31/2022
TRIAL JUDGE:                 HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALEXANDRA RODU ROSENBLATT
DISTRICT ATTORNEY:           JOHN K. BRAMLETT JR.
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 06/13/2023
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.    Carlos Allen was convicted by a Madison County Circuit Court jury for selling more than ten dosage units but less than twenty dosage units of fentanyl (Count I), trafficking controlled substances while in the possession of a firearm (Count II), possessing more than two dosage units but less than ten dosage units of hydrocodone with acetaminophen while in the possession of a firearm (Count III), and possessing more than two dosage units but less than ten dosage units of amphetamine while in the possession of a firearm (Count IV). The circuit court sentenced Allen as a subsequent drug offender and a non-violent habitual offender to serve twenty years for Count I, eighty years for Count II, twelve years for Count

III, and twelve years for Count IV in the custody of the Mississippi Department of Corrections. The circuit court ordered that the sentences imposed in Counts I and II run consecutively to each other and that the sentences imposed in Counts III and IV run concurrently with each other and with the sentences imposed in Counts I and II.

¶2. On appeal, Allen claims that the circuit court erred by admitting into evidence Exhibits S-29, S-30, and S-31, which were text messages referencing alleged drug transactions between him and three individuals: Rachel Brown, "Big Homie," and an unknown contact. Finding no error, we affirm Allen's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶3. On February 22, 2021, Officer Lee Sanders with the Madison Police Department was dispatched to a parking lot where he found an unconscious man who was later identified as Austin Elliott inside a vehicle. Officer Sanders noticed several blue pills labeled "M30" in the cup holder, and medical personnel determined that Elliott had overdosed. After administering Narcan, Elliott was revived and transported to St. Dominic's Hospital where he was treated and released, but he died the next day.

¶4. Officer Sanders obtained permission to search Elliott's cell phone and identified two suspects—Carlos Allen and Nicholas Attkisson. According to Officer Sanders, it appeared that Allen had supplied Elliott with the pills and that Attkisson had planned to obtain two of the pills from Elliott.

¶5. The next day, law enforcement went to Attkisson's place of employment and took him into custody. Attkisson agreed to be a confidential informant because he believed it was the

right thing to do and would avoid being charged with conspiracy. Attkisson had known Allen for approximately two years and had engaged in approximately 200 to 300 prior drug transactions with him.[1] So Attkisson texted Allen and arranged a purchase later that day. Investigator Stephen Tucker provided Attkisson with $300 in cash, a recording device, and a vehicle. During the transaction, which occurred in Madison, Mississippi, Attkisson purchased eleven dosage units of what was believed to be fentanyl for $200. He also gave Allen $50 for gas and $50 for two pills that he had purchased from him the day before.

¶6.    Once the transaction was complete, Investigator Tucker obtained the eleven pills from Attkisson, which were submitted to the Mississippi Forensics Laboratory for testing. Meanwhile, law enforcement conducted a traffic stop on Allen and recovered the $300 as well as two cell phones.[2] During a search of Allen's vehicle, law enforcement also recovered a Smith & Wesson firearm and various narcotics, which were submitted to the Mississippi Forensics Laboratory for testing as well.

¶7.    According to Archie Nichols with the state crime laboratory, the pills that Allen sold to Attkisson during the controlled transaction contained fentanyl. Additionally, Nichols determined that the following substances were recovered from Allen's vehicle after the controlled transaction: one hundred forty-six dosage units containing fentanyl, seventeen dosage units containing hydrocodone and acetaminophen, and four dosage units containing

---

[1] Text messages between Attkisson and Allen from January 28, 2021, to February 23, 2021, were admitted into evidence at trial to show that Attkisson had purchased drugs from Allen, and Attkisson testified that he had purchased drugs from Allen fifteen to twenty-five times during that time period.

[2] One of the cell phones was inoperable.

amphetamine.

¶8.     During Allen's trial, to rebut his entrapment defense, the State sought to admit into evidence text messages from Allen's cell phone showing evidence of prior drug transactions with multiple individuals.  After considering defense counsel's opening statement and cross-examinations, the circuit court held that the text messages were relevant to prove intent and that they were "highly probative."  Additionally, the circuit court held that the text messages were admissible as an admission against interest.

¶9.     After the circuit court's ruling, Investigator Ryan Wigley with the Madison Police Department testified that he performed an extraction on Allen's cell phone.  Investigator Wigley testified that Elliott had texted Allen on February 21, 2021, and said that he would "come get more blues" after he was paid.  The next day, which was the same day that Elliott was found unconscious in his vehicle, Elliott texted Allen again and said, "I got 260 on me too bro.  60 for the quarter and 200 for the blues[.]"  Allen responded, "Ok."  The text messages between Allen and Elliott were admitted into evidence as Exhibit S-26.

¶10.    Then the State sought to admit into evidence text messages between Allen and three other individuals: Rachel Brown, Big Homie, and an unknown contact.  Defense counsel objected again and argued that the text messages were irrelevant, more prejudicial than probative, and contained inadmissible hearsay.  Defense counsel further argued that the text messages could have been from "bots."  The circuit court held that the text messages were relevant and noted that their probative value had already been considered.  The circuit court also held that the text messages were not hearsay because they were admissions by a party

4

opponent. Ultimately, defense counsel's objection was overruled, and the text messages were admitted into evidence. We will discuss portions of these text message threads as they are relevant to the issues raised on appeal.

¶11. Text messages between Allen and Rachel Brown were admitted into evidence as Exhibit S-29. On February 22, 2021, Brown texted, "You said you had some peach 20 coming. Any news on that[?]" Allen responded, "I got em . . . [a]nd 40 mg Vyvanse." Brown asked, "How many on the peach and how much[?]" Allen responded, "I got at least 20 and like 8[.]" Brown indicated that she wanted them, and Allen said, "Okay . . . I'll swing down on ya in a [l]il bit[.]"

¶12. Additionally, text messages between Allen and a contact saved in his cell phone as Big Homie were admitted into evidence as Exhibit S-30. On February 4, 2021, Big Homie texted, "Need some more[.]" Allen responded, "You don't," which was followed by "Do[.]" Big Homie texted, "3 ready," and then, "Just drop me something off to keep me going[.]" Allen responded, "Say less give me a sec[.]"

¶13. Finally, text messages between Allen and an unknown contact were admitted into evidence as Exhibit S-31. The unknown contact texted, "[D]rop a pin," and then, "[H]aley said she need a 100 . . . and I need a 40[.]" Allen responded, "Come to the crib," and the unknown contact texted, "[B]et[.]" Investigator Wigley testified that based on his training and experience as a law enforcement officer, he believed that Allen and the three individuals were "talking about selling pills."

¶14. After considering the evidence presented at trial, the jury found Allen guilty of selling

5

more than ten dosage units but less than twenty dosage units of fentanyl, trafficking controlled substances while in the possession of a firearm, possessing more than two dosage units but less than ten dosage units of hydrocodone with acetaminophen while in the possession of a firearm, and possessing more than two dosage units but less than ten dosage units of amphetamine while in the possession of a firearm. Now Allen appeals.

## DISCUSSION

¶15. In his appellate brief, Allen claims that the circuit court erred by admitting into evidence Exhibits S-29, S-30, and S-31, which were text messages between him and three individuals: Rachel Brown, Big Homie, and an unknown contact. He seemingly argues that (1) the text messages were not authenticated at trial, (2) they were irrelevant and more prejudicial than probative, and (3) they contained inadmissible hearsay.[3]

¶16. This Court reviews a circuit court's admission or exclusion of evidence for an abuse of discretion. *Tillis v. State*, 176 So. 3d 37, 45 (¶15) (Miss. Ct. App. 2014). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶32) (Miss. 2018) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998)). We will find that "[t]he admission or exclusion of evidence 'constitutes reversible error only where a party can show prejudice or harm.'" *Williams v. State*, 54 So. 3d 212, 216 (¶14) (Miss. 2011) (citing *Ross v. State*, 954 So. 2d 968, 1001 (¶67) (Miss. 2007)).

### I.    Authentication

---

[3] Allen does not take issue with the text messages between him and Elliott or Attkisson that were admitted into evidence at trial.

¶17. Allen claims that the text messages between him and Rachel Brown, Big Homie, and the unknown contact were not authenticated at trial. The State asserts that because Allen did not object to authentication of the text messages at trial, he may not raise the issue on appeal. Our supreme court has held that "an objection on one ground waives remaining grounds for purposes of appeal and that the failure to raise an issue in the trial court requires [the appellate court] to impose a procedural bar on appeal . . . ." *Ambrose v. State*, 254 So. 3d 77, 118 (¶121) (Miss. 2018) (quoting *Evans v. State*, 725 So. 2d 613, 638 (¶48) (Miss. 1997)). Although Allen's objection was not entirely clear, he seemingly asserted at trial that the text messages lacked foundation. *See Webb v. State*, 339 So. 3d 118, 128 (¶33) (Miss. 2022) ("The test for authenticating and admitting electronic evidence requires the proponent offer a foundation from which the jury could reasonably find the evidence is what the proponent says it is.").

¶18. Notwithstanding any procedural bar, we find no merit to Allen's argument. Before a trial court admits evidence, "the proponent [of the evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." MRE 901(a). Allen appears to argue that the text messages were not authenticated because the State did not establish the identities of the alleged drug seekers or that the text messages were about drugs.

¶19. In *Holloway v. State*, 270 So. 3d 1113 (Miss. Ct. App. 2018), the defendant was convicted of three counts of possession of a controlled substance with intent to distribute. *Id*. at 1114 (¶1). "On appeal, [Holloway] challenge[d] the admission of text

7

messages . . . , which were recent solicitations to purchase illegal drugs." *Id*. He argued that "the messages were hearsay and not properly authenticated." *Id*. This Court noted that "the mere fact 'that a text message emanates from a cell phone number assigned to the purported author without more has not typically been regarded as sufficient to support a finding of authenticity' . . . ." *Id*. at 1115 (¶5). This Court explained, however, that principle was beside the point. *Id*. at 1116 (¶6). Ultimately, this Court held that "the relevance of the messages found on Holloway's phone [did] not depend on the identity of the senders." *Id*. Rather, "[t]he messages were relevant because they were solicitations that tended to show Holloway possessed drugs with the intent to distribute them." *Id*.

¶20. Similarly, the text messages in this case were relevant to show that Allen possessed and sold drugs to multiple individuals. Investigator Wigley testified that based on his training and experience as a law enforcement officer, he believed that Allen and the three individuals were "talking about selling pills" in the text messages. Indeed, Allen told Rachel Brown in one of the text messages that he had 40mg of Vyvanse. Additionally, Attkisson indicated that he arranged drug purchases from Allen through text messages, and text messages between Attkisson and Allen from January 28, 2021, to February 23, 2021, were admitted into evidence. Attkisson testified that he had purchased drugs from Allen fifteen to twenty-five times during that period. The text messages at issue follow the same pattern as the text messages between Allen and Attkisson. In their totality, the circumstances made a prima facie showing that the text messages were about selling drugs. "Once there is a prima facie showing of authenticity, the evidence goes to the jury, which will then determine

8

the ultimate question of whether the evidence is what it was claimed to be." *Id*. (citing *Young v. Guild*, 7 So. 3d 251, 262 (¶36) (Miss. 2009)). Therefore, this issue lacks merit.

## II. Relevance

¶21. Allen claims that the text messages were irrelevant and more prejudicial than probative.

¶22. The Mississippi Rules of Evidence "require that evidence be relevant, and, if so, it is generally admissible." *Flowers v. State*, 773 So. 2d 309, 318 (¶24) (Miss. 2000) (citing MRE 401, 402). However, even relevant evidence may not be admissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." MRE 403. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶23. Here, the text messages were relevant to show intent and a common plan of arranging drug sales by text messages to multiple individuals. Furthermore, the circuit court instructed the jury "that the evidence of another crime, wrong or act is not to be considered . . . as evidence that [Allen] committed the crime charged in the indictment but may be considered . . . for the limited purpose of showing intent, knowledge, motive, plan and absence of mistake." "We presume that jurors follow the instructions of the circuit court." *Watts v. State*, 976 So. 2d 364, 370 (¶18) (Miss. Ct. App. 2008) (citing *King v. State*, 857 So.

9

2d 702, 724 (¶62) (Miss. 2003)).

¶24. Additionally, our supreme court has held that once a defendant makes out a prima facie case of entrapment, evidence of predisposition is relevant and always admissible. *Tanner v. State*, 566 So. 2d 1246, 1248 (Miss. 1990). "Entrapment has been defined as 'the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense.'" *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993) (quoting *Phillips v. State*, 493 So. 2d 350, 354 (Miss. 1986)).

¶25. The text messages were relevant to rebut the defense's entrapment defense. During opening statements, defense counsel suggested that Allen was simply a drug addict and lacked the specific intent required to find him guilty of trafficking. Defense counsel argued that law enforcement "needed somebody to put on a fork," and "[t]hat person ended up being . . . Allen . . . [b]ecause the money that was used [in this case] came from the Madison Police Department." Later, during Investigator Tucker's cross-examination, defense counsel asked, "So . . . [w]ithout the money, without the vehicle[,] and without Mr. Attkisson willing to make a purchase, the purchase wouldn't have happened, would it?" Investigator Tucker responded, "I don't know." Allen's theory of defense was that he was simply a drug user, and law enforcement induced him or led him to commit a crime for the purpose of trapping him for the offense. For these reasons, we cannot say that the circuit court abused its discretion by finding that the text messages were relevant and that their probative value was not substantially outweighed by the danger of unfair prejudice.

### III. Hearsay

¶26. Allen claims that the circuit court erred by admitting the text messages because they contained inadmissible hearsay. "Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). "Hearsay is not admissible except as provided by law." MRE 802. Allen's outgoing text messages that he sent from his cell phone were admissible as statements by a party opponent under Mississippi Rule of Evidence 801(d)(2)(A). Further, the incoming messages from the three individuals were not offered for the truth of the matter asserted. Rather, they were offered to show intent or a common plan as well as Allen's predisposition of arranging drug sales by text messages.

¶27. Even if the text messages contained inadmissible hearsay, our supreme court has held that "where the prejudice from an erroneous admission of evidence dims in comparison to other overwhelming evidence, this Court has refused to reverse." *McKee v. State*, 791 So. 2d 804, 810-11 (¶24) (Miss. 2001) (quoting *Carter v. State*, 722 So. 2d 1258, 1262 (¶14) (Miss. 1998)). In this case, the evidence of Allen's guilt is overwhelming. Therefore, we cannot say that the circuit court committed reversible error by admitting the text messages into evidence at trial.[4]

¶28. Finally, Allen claims that the admission of the text messages violated the Confrontation Clause. U.S. Const. amend. VI. This Court has held that "a general hearsay

---

[4] Though not the grounds for the circuit court's ruling, we should not ignore the following hearsay exceptions, which have application: the present-sense-impression exception, the exception regarding then-existing mental, emotional, or physical condition, and the exception regarding records of a regularly conducted activity. MRE 803(1), (3) & (6).

11

objection is insufficient to preserve an alleged Confrontation Clause violation for appellate review." *Murray v. State*, 345 So. 3d 610, 618 (¶17) (Miss. Ct. App. 2022) (quoting *Morment v. State*, 315 So. 3d 475, 482-83 (¶31) (Miss. Ct. App. 2020)). Although it does not appear that Allen specifically mentioned his rights under the Confrontation Clause at trial, he argued that "[i]t would be different if [the State] brought these witnesses in here to testify[,] . . . [but] we don't know who these people are. It could be bots."

¶29. We hold that Allen did not properly assert this claim in the circuit court, and therefore it is waived. Notwithstanding any procedural bar, Allen's Confrontation Clause Claim is without merit. "The Confrontation Clause 'only applies to statements that are testimonial.'" *Id*. at (¶18) (quoting *Corbin v. State*, 74 So. 3d 333, 338 (¶13) (Miss. 2011)). "Testimonial statements are those reasonably expected to be used 'prosecutorally,' such as confessions, affidavits, custodial police examinations, and depositions." *Id*. Additionally, our supreme court has indicated that only "testimonial hearsay" must be filtered by the Confrontation Clause." *Smith v. State*, 986 So. 2d 290, 296-97 (¶20) (Miss. 2008). "Nontestimonial hearsay is subject to evidentiary rules concerning reliability rather than being subject to scrutiny under the Confrontation Clause." *Id*. Here, the statements of the three individuals were nontestimonial statements. The individuals—Rachel Brown, Big Homie, and the unknown contact—would not have reasonably expected that their statements would later be used at trial. Accordingly, their statements are not subject to scrutiny under the Confrontation Clause. Therefore, this issue is without merit.

## CONCLUSION

12

¶30. After review, we find that the circuit court did not abuse its discretion by admitting Exhibits S-29, S-30, and S-31 into evidence at trial. Accordingly, we affirm Allen's convictions and sentences.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**